## JAMES C. LESTORTI v. RALPH J. DELEO ET AL.
### (SC 18393)

Rogers, C. J., and Katz, Palmer, Zarella and McLachlan, Js.

---

Argued April 21—officially released September 28, 2010

*Richard P. Weinstein,* with whom were *Nathan A. Schatz* and, on the brief, *Kerry M. Wisser,* for the appellant (defendant Louis A. Lestorti, Jr.).

*Opinion*

ZARELLA, J. In this certified appeal,[1] the defendant Louis A. Lestorti, Jr.,[2] appeals from the judgment of the Appellate Court, which affirmed the trial court's decision to grant the motion of the plaintiff, James C. Lestorti, to strike the defendant's counterclaim for equitable contribution. *Lestorti* v. *DeLeo,* 114 Conn. App. 50, 51, 57, 968 A.2d 941 (2009). On appeal to this court, the defendant claims that the Appellate Court's decision (1) conflicts with well established Connecticut law concerning the rights of coguarantors to contribution, and (2) is improperly based on an assumption of a fact that is not part of the record. We reverse the judgment of the Appellate Court.

The following relevant facts and procedural history are set forth in the opinion of the Appellate Court. "In April, 2006, the plaintiff instituted an action in multiple counts alleging, inter alia, fraud against the defendant, among others. That action subsequently was transferred to the Complex Litigation Docket in the judicial district of Hartford. On February 23, 2007, the defendant

[1] We granted the petition of the defendant Louis A. Lestorti, Jr., for certification to appeal, limited to the following issue: "Did the Appellate Court properly affirm the trial court's decision granting the plaintiff's motion to strike the defendant's counterclaim for equitable contribution?" *Lestorti* v. *DeLeo,* 292 Conn. 914, 973 A.2d 663 (2009).

[2] The plaintiff filed a complaint against numerous defendants. At issue in this appeal is the plaintiff's motion to strike the counterclaim of the defendant Louis A. Lestorti, Jr. In the interest of simplicity, we refer to Louis A. Lestorti, Jr., as the defendant throughout this opinion.

filed a counterclaim, alleging a cause of action for equitable contribution.

"In his counterclaim, the defendant alleged the following facts. In a guaranty agreement dated June 11, 2001 . . . the plaintiff, the defendant and [Otto Paparazzo and OJP Development Corporation] each agreed jointly and severally to guaranty the liability of Pond Place Development II, LLC (Pond Place), to First Union National Bank under a note in the amount of $7,875,000.[3] The note was secured by a mortgage. On or about August 31, 2004, Wachovia Bank, N.A. (Wachovia),[4] the successor to First Union National Bank, commenced a foreclosure action against, inter alia, Pond Place, the principal obligor, and the plaintiff and the defendant, secondary obligors, under the terms of the guaranty agreement. This foreclosure action arose out of a default on the promissory note. Although both the plaintiff and the defendant were initially named as defendants in the foreclosure action by virtue of their joint and several liability on the guaranty, the action was dismissed on May 3, 2006, as to the plaintiff because Wachovia [had] failed to make proper service on him. The defendant was found to be liable for the amount of the deficiency judgment.

"When the court rendered judgment of strict foreclosure [on August 8, 2005], it found that the debt [owed] to Wachovia, not including fees and costs, was $2,400,834.96 and that [on the basis of appraisals] the

[3] On July 2, 2003, the plaintiff and the defendant executed a general release in favor of Paparazzo and OJP Development Corporation, releasing them from, inter alia, all claims in connection with the guaranty agreement.

[4] "[I]n its memorandum of decision, [the trial court] referred to 'Wachovia's successor in interest.' The plaintiff noted in his memorandum of law in support of his motion to strike that shortly before the judgment of strict foreclosure was rendered, Wachovia assigned its interest to another entity." *Lestorti v. DeLeo*, supra, 114 Conn. App. 52 n.2. Because there is no dispute regarding the identity of the foreclosing party, we refer to Wachovia as the foreclosing party.

value of the property being foreclosed was $295,000. [Neither the plaintiff nor the defendant redeemed the property in connection with the foreclosure action. Thus, on December 12, 2005, titled vested in Wachovia.] To avoid the substantial risk of liability for a much larger deficiency judgment, the defendant negotiated and settled Wachovia's deficiency claim for $275,000 by virtue of a stipulated deficiency judgment. Subsequently, the defendant paid Wachovia $275,000 and obtained a satisfaction of judgment. In his counterclaim, the defendant alleged that, as a joint obligor under the guaranty of the promissory note, the plaintiff was liable to him for $137,500, [which represents] the plaintiff's proportionate and equitable share of the defendant's payment to satisfy the deficiency judgment.

"On April 13, 2007, the plaintiff filed a motion to strike the defendant's counterclaim. The plaintiff argued that, as a matter of law, the defendant had no right of contribution against him because the deficiency judgment rendered in the foreclosure action, for which the defendant sought contribution, was not a joint obligation. The defendant subsequently filed an objection to the motion to strike.

"On October 10, 2007, the [trial] court granted the plaintiff's motion to strike the defendant's counterclaim. The court noted that the plaintiff and the defendant had been jointly liable on the guaranty of the note underlying the  . . .  mortgage but that liability was extinguished by the foreclosure obtained by Wachovia. The court concluded that because only the defendant was liable for the deficiency judgment, and the plaintiff was not, the defendant had no equitable right to contribution from the plaintiff for a portion of that deficiency judgment." Id., 51–53.

Thereafter, the trial court rendered judgment for the plaintiff on the defendant's counterclaim, from which

the defendant appealed to the Appellate Court. Id., 51. In his appeal to the Appellate Court, the defendant claimed that the trial court improperly had concluded that he had no right to equitable contribution from the plaintiff because the plaintiff was not liable under the deficiency judgment. Id., 53. The Appellate Court disagreed. Id. In its decision, the Appellate Court concluded that Wachovia's failure to obtain personal jurisdiction over the plaintiff in the foreclosure action impaired the defendant's right to contribution from the plaintiff, and, therefore, under the principles set forth in the Restatement (Third) of Suretyship and Guaranty, "Wachovia . . . was not entitled to collect from the defendant an amount greater than the defendant's contributive share of the guaranty, in this case, half." Id., 56. Thus, the Appellate Court determined that the defendant was not entitled to reimbursement from the plaintiff for any amount. The Appellate Court concluded that, "to the extent, if any, that the defendant's settlement with Wachovia reflected any payment of the plaintiff's obligation to Wachovia, the payment was gratuitous." Id. The Appellate Court further determined that "the defendant's contributive share was presumptively half of the obligation, which, at the time of the deficiency judgment, was more than $1,050,000. [The defendant's] payment of $275,000 would not appear in the circumstances to be anything other than a portion of his own contributive share. Under either rationale, the defendant is not entitled to reimbursement from the plaintiff." Id. Finally, the Appellate Court determined that "the defendant is not entitled to restitution on a theory of unjust enrichment because the plaintiff, being effectively discharged from his obligation to [Wachovia by virtue of General Statutes § 49-1],[5] owed nothing at the

[5] General Statutes § 49-1 provides in relevant part: "The foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure and also against any person or persons upon whom service of process to constitute an action in personam

time of the defendant's payment and thus was not enriched, justly or otherwise, by the defendant's payment." Id. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id., 57. This certified appeal followed.

Before addressing the defendant's claims, we set forth the applicable standard of review. "The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the [pleading] that has been stricken and we construe the [pleading] in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *Sullivan .v. Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 117, 889 A.2d 810 (2006).

The defendant's first claim is that the Appellate Court's decision conflicts with well established Connecticut law concerning a coguarantor's right of contribution when the coguarantor has made a payment on a joint obligation. Specifically, the defendant claims that the right of contribution between coguarantors is based on equitable principles and the theory of implied contract and, therefore, arises from the relationship between the coguarantors alone, and not the relationship between the creditor and the coguarantors. The defendant argues, on the basis of this principle, that it is irrelevant to the defendant's right of contribution that Wachovia failed to serve the plaintiff properly in the

could have been made within this state at the commencement of the foreclosure; but the foreclosure is not a bar to any further action upon the mortgage debt, note or obligation as to any person liable for the payment thereof upon whom service of process to constitute an action in personam could not have been made within this state at the commencement of the foreclosure. . . ."

foreclosure action. The defendant claims that the Appellate Court's decision conflicts with this principle because that court attached significance to the fact that Wachovia was barred by § 49-1 from continuing to enforce the note against the plaintiff. We agree.

We begin our analysis by setting forth the legal principles that govern the right of contribution between coguarantors. Under Connecticut law, the right of contribution between coguarantors is based on the theory of implied contract. *Waters* v. *Waters*, 110 Conn. 342, 345, 148 A. 326 (1930). When two or more persons guarantee the debt of another, they simultaneously enter into "an implied promise on the part of each to contribute his share if necessary to meet the common obligation." Id., 346. "[T]his right is an existing obligation running from the inception of the relation[ship] . . . ." Id. Nevertheless, "its enforcement does not accrue . . . until the actual payment of the common debt." Id.

The only parties to this implied contract are the coguarantors. The creditor is *not* a party. Indeed, "[t]he creditor has nothing to do with the right of the [coguarantors] for contribution among themselves, and has no right to do any act tending to impair it." 18 Am. Jur. 2d 42, Contribution § 32 (2004). Accordingly, "the discharge of one [coguarantor's] direct liability to the [creditor] will not relieve [him or her] from his or her liability to contribute to the other [coguarantors] . . . whether the discharge results from contract or from operation of law." Id., pp. 41–42. In addition, "the fact that a creditor sues only some of several [coguarantors], or recovers judgment against fewer than all of them, does not excuse those not sued or not included in the judgment from paying their part of the joint debt. Accordingly, as a rule, one or more of the [coguarantors] against whom the judgment is recovered may, upon paying the creditor, compel contribution from all other [coguarantors]." Id., § 35, p. 44.

A coguarantor, however, is not entitled to contribution for *any* amount paid to the creditor toward the common debt. Rather, under Connecticut law, a guarantor's right of contribution from a coguarantor arises only when the guarantor "has paid in excess of *his share of the whole [outstanding] obligation*," and the amount of contribution he is entitled to collect is limited to "the amount he has paid *in excess of his share of the whole [outstanding] obligation*."[6] (Emphasis added.) *Waters* v. *Waters*, supra, 110 Conn. 345. The reason for this limitation is that, in Connecticut, "[a] guarantor, as between himself and his co-guarantors, is a principal for the portion of the debt which he ought to pay and is a surety [or secondary obligor] for the remainder . . . ." *Bristol Bank & Trust Co.* v. *Broderick*, 122 Conn. 310, 315, 189 A. 455 (1937). Thus, when a coguarantor has made a payment to the creditor in an amount that is *less than his share of the whole outstanding[7] obliga-*

---

[6] In *Waters*, we stated that, "if one debtor is compelled to pay *the full amount of the debt*, a right of contribution against the other at once arises for the amount he has paid in excess of his share of the whole obligation." (Emphasis added.) *Waters* v. *Waters*, supra, 110 Conn. 345. Although *Waters* includes the phrase "the full amount of the debt"; id.; we conclude that payment *in full* is not required for a right of contribution to exist. Rather, a guarantor need only make a payment "in excess of his share of the whole obligation." Id. We reach this conclusion because our holding in *Waters* was based in part on *Chipman* v. *Morrill*, 20 Cal. 130 (1862), a case in which the California Supreme Court stated that a right of contribution exists when one party has paid "the entire amount of the note, *or more than his proportionate part* . . . ." (Emphasis added.) Id., 135; see *Waters* v. *Waters*, supra, 346. In addition, our conclusion is supported by the Restatement (Third) of Suretyship and Guaranty. See footnote 10 of this opinion.

[7] To be clear, the value of one's contributive share is measured by the amount of the *outstanding* debt, not the original value of the debt. The following illustration demonstrates how to calculate a party's contributive share and right to contribution under Connecticut law: $A$ loans $B$ $1000. $C$ and $D$ each agree to equally guarantee the debt. $B$ subsequently repays $200 to $A$ and, thereafter, becomes insolvent. At this point, the outstanding debt is $800, which represents the full amount of the debt ($1000) less the amount that $B$ had paid ($200). Therefore, the contributive shares of $C$ and $D$ are each one half of the amount of the outstanding debt ($800), or $400. Thus, if $A$ sues $C$, and $C$ settles and discharges the entire outstanding debt by

*tion,* he has *no right to contribution* from the other coguarantors.

This rule is echoed in the Restatement (Third) of Suretyship and Guaranty,[8] which provides in relevant part that a cosurety is not entitled to contribution unless it pays more than its contributive share because, "[a]s between cosureties for the same underlying obligation, each cosurety is a principal obligor to the extent of its contributive share . . . and a secondary obligor as to the remainder of its duty pursuant to its secondary obligation."[9] Restatement (Third), Suretyship and Guar-

paying *A* $600, then *C* has a right of contribution against *D* in the amount of $200, which represents the amount of money *C* had paid in excess of his share of the outstanding debt.

[8] We previously have relied on the Restatement (Third) of Suretyship and Guaranty to fill gaps in and support our common law. See, e.g., *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 538 n.11, 839 A.2d 1250 (2004) ("[o]ur interpretation of [General Statutes] § 14-52 . . . is supported by the Restatement [Third] of Suretyship and Guaranty, § 73, pp. 290–91 [1996]"); *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, 348, 721 A.2d 1187 (1998) (relying on § 22 of Restatement [Third] of Suretyship and Guaranty for proposition that "[a] surety, upon payment, may recover [from] his principal in an action at law for money paid to the principal's use" [internal quotation marks omitted]); cf. *Southington* v. *Commercial Union Ins. Co.*, 254 Conn. 348, 358, 757 A.2d 549 (2000) (quoting Restatement of Security for proposition that "[t]he obligation of a surety is an additional assurance to the one entitled to the performance of an act that the act will be performed" [internal quotation marks omitted]). We also frequently have relied on the Restatement (Second) of Contracts. See, e.g., *Auto Glass Express, Inc.* v. *Hanover Ins. Co.*, 293 Conn. 218, 227, 975 A.2d 1266 (2009) (relying on 1 Restatement [Second], Contracts §§ 53 [1] and 58 [1981]); *Perricone* v. *Perricone*, 292 Conn. 187, 195, 972 A.2d 666 (2009) (relying on 2 Restatement [Second], Contracts § 213 [1981]).

[9] Chief Justice Rogers, in her concurring and dissenting opinion, rejects Connecticut precedent and cites to no case in support of any alternative theory, rejects the Restatement (Third) of Suretyship and Guaranty, seeks to apply an exception to the rule that she rejects by citing to the Restatement of the Law of Restitution, which exception is premised on facts not pleaded in this case, and relies on a statement drawn from an inapplicable case from Maine, which does not support her view or even deal with the relevant subject matter. See footnote 11 of this opinion. The theory behind the law of joint tortfeasor liability is not even remotely the same in theory or development as that of the law of suretyship. Finally, even if we were to

anty § 55 (1), p. 236 (1996); see also id., illustration 1, p. 237.[10] Many other authorities also support this rule. See, e.g., 74 Am. Jur. 2d 148, Suretyship § 172 (2001) ("[when] one of two or more sureties for the same obligation has paid *more than his share of the debt*, he is entitled to contribution . . . for *the excess paid over his share*" [emphasis added]); id., § 176, p. 151 ("The right of a surety to contribution does not arise until he has paid *more than his proportion of the debt* . . . . [T]herefore, a surety who has paid less than his ratable share cannot enforce contribution, even against his cosureties *who have paid nothing.*" [Emphasis added.]); id., § 177 ("If a surety satisfies the full demand of the creditor, thereby discharging all the sureties, by paying less than the whole amount, he is entitled to contribution from his cosureties to reimburse him *for what he has paid in excess of his part.* However, one who pays nothing in excess of his share of the debt to the common creditor *may not enforce contribution* from another surety who settles at a discount, there being no further liability on the part of either." [Emphasis added.]); 38A C.J.S. 763–64, Guaranty § 161 (2008) ("The right of a guarantor to contribution is limited to the amount by which the guarantor's actual payment of the . . . debt exceeds his . . . fair share. Thus, for example, when one of two guarantors . . . pays three-quarters of the debt, the guarantor may seek contribution for an amount over and above his . . . share,

adopt the theory espoused by Chief Justice Rogers, it would be for the first time and, therefore, would affect numerous existing guarantees that are still in force.

[10] Illustration 1 in the Restatement (Third) of Suretyship and Guaranty, § 55, provides in relevant part: "P borrows $1,000 from C. $S_1$ and $S_2$ are cosureties for P. $S_1$ and $S_2$ agree that the contributive share of $S_1$ is $600 and the contributive share of $S_2$ is $400. Both $S_1$ and $S_2$ are liable to C to the extent of $1,000. . . . Thus, $S_1$ has a right of contribution against $S_2$ to the extent that $S_1$ has liability to C in excess of $600. Similarly, $S_2$ has a right of contribution against $S_1$ to the extent that $S_2$ has liability to C in excess of $400."

namely one-quarter of the debt; however, if the guarantor instead satisfies one-quarter of the debt, the guarantor would not have [an] action for contribution because he . . . has not paid more than his . . . fair share of the common burden."); 38A C.J.S. 767, supra, § 165 ("[t]here must be some form of payment of an amount more than the proportionate share of the guarantor who has paid in order to permit him to obtain contribution"); 23 S. Williston, Contracts (4th Ed. 2002) § 61:65, p. 236 ("the right [to contribution] arises as soon as, but not before, the cosurety has paid anything in excess of the share which, as between itself and its cosureties, it ought to bear").[11]

---

[11] Chief Justice Rogers, in her concurring and dissenting opinion, does not appear to express a view regarding this rule but nonetheless concludes, on the basis of an exception to this rule contained in § 82 of the Restatement of the Law of Restitution that the defendant is entitled to contribution from the plaintiff for one half of the $275,000 that the defendant had paid to Wachovia in satisfaction of the deficiency judgment. The Restatement of the Law of Restitution provides in relevant part that, "[i]f the payor secures a full release from the creditor . . . [he] is entitled to contribution although the amount thus paid is less than what was originally his proportionate share." (Emphasis added.) Restatement, Restitution § 82, comment (b) (1937). The rationale for this rule is that, if the payor has conveyed a benefit on the nonpaying coobligor, the payor is entitled to restitution to prevent the nonpaying coobligor from becoming unjustly enriched. See, e.g., New Hartford v. Connecticut Resources Recovery Authority, 291 Conn. 433, 460, 970 A.2d 592 (2009) (restitution is remedy for unjust enrichment). Connecticut law has yet to adopt this exception, and we conclude that this is not an appropriate case to consider whether to do so because the facts in the present case do not fall within the exception. In the present case, the trial court found that the plaintiff was released from his obligations on the note by operation of § 49-1 before the defendant made a payment to Wachovia. Thus, the payor in this case, namely, the defendant, did nothing to secure the plaintiff's release from the creditor. Because the defendant did not confer any benefit on the plaintiff, there has been no unjust enrichment, and, therefore, this exception does not apply.

Chief Justice Rogers, in contravention of the language of the Restatement of the Law of Restitution, claims that the paying coobligor need not secure a full release from the creditor or confer any benefit on the nonpaying coobligor in order to be entitled to contribution for amounts paid that do not exceed the paying coobligor's contributive share when the nonpaying coobligor is released from his obligations by operation of law. In support of this argument, Chief Justice Rogers relies on 18 Am. Jur. 2d 16, supra, § 6, and the dissenting opinion in Estate of Dresser v. Maine Medical Center,

960 A.2d 1205, 1209 (Me. 2008) (Mead, J., dissenting). Neither of these sources, however, supports Chief Justice Rogers' claim.

The second edition of American Jurisprudence provides in relevant part that "[c]ontribution actions are based [on] principles of natural justice, which require that persons under a common burden bear responsibility in equal proportions and that one party not be required to bear more than his or her just share *to the advantage of his or her co-obligors*." (Emphasis added.) When a nonpaying coobligor, like the plaintiff in this case, is released from his obligations by operation of law, *he reaps no advantage* from the paying coobligor's payment to the creditor. 18 Am. Jur. 2d 16, supra, § 6. Thus, § 6 does not support Chief Justice Rogers' claim.

Chief Justice Rogers' reliance on *Estate of Dresser* also is misplaced. Unlike the present case, *Estate of Dresser* involved the right of contribution between *joint tortfeasors*, as opposed to coobligors. See *Estate of Dresser* v. *Maine Medical Center*, supra, 960 A.2d 1206. In addition, *Estate of Dresser* does not discuss the Restatement of the Law of Restitution and does not conclude that a coobligor who has paid less than his contributive share is entitled to contribution when the nonpaying coobligor is released from his obligations by operation of law. Rather, that case discusses whether Maine should adopt § 23 of the Restatement (Third) of Torts, Apportionment of Liability, which requires extinguishment of claims by joint tortfeasors as a precondition for a contribution action. Restatement (Third), Torts, Apportionment of Liability § 23, p. 284 (2000); see *Estate of Dresser* v. *Maine Medical Center*, supra, 1207–1208. *Estate of Dresser*, therefore, has no relevance to the facts or issues in the present case.

Finally, we note that, regardless of whether we adopt the unique interpretation of the exception contained in § 82 of the Restatement of the Law of Restitution, as Chief Justice Rogers urges, the defendant's allegations in his counterclaim are insufficient to invoke that exception because the defendant has not alleged that he had secured a full release from Wachovia, *that the plaintiff otherwise had been released from his obligations on the note*, or that the defendant had conferred any benefit on the plaintiff resulting in the plaintiff's unjust enrichment. When we review an appeal from a trial court's decision on a motion to strike, "our analysis is . . . limited only to those well-pleaded facts and those facts necessarily implied from the allegations . . . ." (Internal quotation marks omitted.) *Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 262 n.20, 990 A.2d 206 (2010). Rather than looking solely at the allegations in the counterclaim, however, Chief Justice Rogers bases her analysis and conclusions wholly on the trial court's acceptance of a stipulated fact submitted by the parties, namely, that the plaintiff was released from his obligations on the note by operation of § 49-1. Although this could be appropriate in the context of a motion for summary judgment, it is not appropriate in the context of a motion to strike. "[A] motion to strike challenges the legal sufficiency *of a pleading* and, consequently, requires *no factual findings by the trial court* . . . ." (Emphasis added.) Id., 252. Because the defendant's counterclaim, even when construed liberally and viewed in the broadest manner possible, is devoid of any allegations that invoke the exception, there is no basis to apply it in the present case.

The Restatement (Third) of Suretyship and Guaranty also contains provisions that are intended to protect the interests of secondary obligors in the event that the creditor "acts to increase the secondary obligor's risk of loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance . . . . [Such] [a]n act . . . is [called] an 'impairment of suretyship status.' " Restatement (Third), supra, § 37, p. 157. In general, if a creditor acts in such a manner as to impair the suretyship status of a secondary obligor, the secondary obligor's duties are discharged to the extent of the impairment. See generally id., §§ 37 through 39, pp. 157–58, 163, 168. A somewhat analogous rule in the context of negotiable instruments is codified at General Statutes § 42a-3-605.[12] The Appellate Court's decision

[12] General Statutes § 42a-3-605 provides: "(a) In this section, the term 'endorser' includes a drawer having the obligation described in section 42a-3-414(d).

"(b) Discharge, under section 42a-3-604, of the obligation of a party to pay an instrument does not discharge the obligation of an endorser or accommodation party having a right of recourse against the discharged party.

"(c) If a person entitled to enforce an instrument agrees, with or without consideration, to an extension of the due date of the obligation of a party to pay the instrument, the extension discharges an endorser or accommodation party having a right of recourse against the party whose obligation is extended to the extent the endorser or accommodation party proves that the extension caused loss to the endorser or accommodation party with respect to the right of recourse.

"(d) If a person entitled to enforce an instrument agrees, with or without consideration, to a material modification of the obligation of a party other than an extension of the due date, the modification discharges the obligation of an endorser or accommodation party having a right of recourse against the person whose obligation is modified to the extent the modification causes loss to the endorser or accommodation party with respect to the right of recourse. The loss suffered by the endorser or accommodation party as a result of the modification is equal to the amount of the right of recourse unless the person enforcing the instrument proves that no loss was caused by the modification or that the loss caused by the modification was an amount less than the amount of the right of recourse.

"(e) If the obligation of a party to pay an instrument is secured by an interest in collateral and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of an endorser or accommodation party having a right of recourse against the obligor is dis-

in the present case discusses two examples of the rule contained in the Restatement (Third) of Suretyship and Guaranty. See *Lestorti* v. *DeLeo*, supra, 114 Conn. App. 54–55. First, if a creditor releases the principal obligor from its duties pursuant to the underlying obligation, the secondary obligor is discharged from its duties pursuant to the secondary obligation *unless the rights of the secondary obligor to recourse against the principal obligor are preserved.* See Restatement (Third), supra,

charged to the extent of the impairment. The value of an interest in collateral is impaired to the extent (i) the value of the interest is reduced to an amount less than the amount of the right of recourse of the party asserting discharge, or (ii) the reduction in value of the interest causes an increase in the amount by which the amount of the right of recourse exceeds the value of the interest. The burden of proving impairment is on the party asserting discharge.

"(f) If the obligation of a party is secured by an interest in collateral not provided by an accommodation party and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of any party who is jointly and severally liable with respect to the secured obligation is discharged to the extent the impairment causes the party asserting discharge to pay more than that party would have been obliged to pay, taking into account rights of contribution, if impairment had not occurred. If the party asserting discharge is an accommodation party not entitled to discharge under subsection (e), the party is deemed to have a right to contribution based on joint and several liability rather than a right to reimbursement. The burden of proving impairment is on the party asserting discharge.

"(g) Under subsection (e) or (f), impairing value of an interest in collateral includes (i) failure to obtain or maintain perfection or recordation of the interest in collateral, (ii) release of collateral without substitution of collateral of equal value, (iii) failure to perform a duty to preserve the value of collateral owed, under article 9 or other law, to a debtor or surety or other person secondarily liable, or (iv) failure to comply with applicable law in disposing of collateral.

"(h) An accommodation party is not discharged under subsection (c), (d) or (e) unless the person entitled to enforce the instrument knows of the accommodation or has notice under section 42a-3-419(c) that the instrument was signed for accommodation.

"(i) A party is not discharged under this section if (i) the party asserting discharge consents to the event or conduct that is the basis of the discharge, or (ii) the instrument or a separate agreement of the party provides for waiver of discharge under this section either specifically or by general language indicating that parties waive defenses based on suretyship or impairment of collateral."

§§ 38 through 39, pp. 163, 168; cf. General Statutes § 42a-3-605 (b) ("[d]ischarge . . . of the obligation of a party to pay an instrument does not discharge the obligation of an endorser or accommodation party having a right of recourse against the discharged party"). Second, if a creditor allows the statute of limitations to expire as to the principal obligor, "the secondary obligor's rights and duties with respect to the principal obligor and the [creditor] are the same as if . . . the [creditor] has released the principal obligor from its duties . . . without preserving the secondary obligor's recourse against the principal obligor." Restatement (Third), supra, § 43, p. 195. Under the Restatement (Third) of Suretyship and Guaranty, in order to preserve the secondary obligor's right of recourse against the principal obligor, the creditor must include express language to that effect in its release of the principal obligor. See id., § 38 (1), p. 163. Under Connecticut law, however, no such requirement exists because the secondary obligor's right of recourse against the principal obligor is automatically preserved by virtue of the fact that we apply the implied contract theory to the right of contribution. As we previously discussed, under an implied contract theory, a creditor cannot unilaterally impair the right of contribution between coguarantors because the creditor is not a party to the contract. Because the right of contribution is not affected by the creditor's actions, a guarantor's duties are not discharged when the creditor releases a coguarantor or allows the statute of limitations to expire as to a coguarantor.

In the present case, the Appellate Court concluded that Wachovia's failure to properly serve and obtain personal jurisdiction over the plaintiff in the foreclosure action, and subsequent inability to obtain a deficiency judgment against him pursuant to General Statutes § 49-1, "[f]unctionally . . . allowed a limitations period to expire against the plaintiff . . . ." *Lestorti* v. *DeLeo*,

supra, 114 Conn. App. 55. The Appellate Court further concluded that "[n]o right of recourse [was] applicable. Wachovia [thus] was not entitled to collect from the defendant an amount greater than the defendant's contributive share of the guaranty, in this case, half." Id., 56. Accordingly, the Appellate Court concluded that, "to the extent, if any, that the defendant's settlement with Wachovia reflected any payment of the plaintiff's obligation to Wachovia, the payment was gratuitous." Id.

We conclude that the Appellate Court's conclusions were improper because (1) the court did not apply the theory of implied contract to the defendant's claim for contribution, and (2) they contradict the express terms of the parties' guaranty agreement. First, under the theory of implied contract, the defendant's right of recourse and, more specifically, his right of contribution from the plaintiff was not impaired by Wachovia's failure to obtain jurisdiction over the plaintiff in the foreclosure action because Wachovia was not a party to the implied contract between the plaintiff and the defendant and, therefore, could not unilaterally impair the right of contribution between them. See, e.g., 18 Am. Jur. 2d 42, supra, § 32. Because the defendant continued to have a right of recourse against the plaintiff, no part of the defendant's obligations to Wachovia was discharged as a result of Wachovia's actions or omissions. Accordingly, the Appellate Court's conclusion to the contrary was improper.

The Appellate Court's conclusions also contradict the express terms of the guaranty agreement between the parties and Wachovia. The guaranty agreement provided that Wachovia could, "without impairing or releasing the obligations of [any] [g]uarantor . . . [a]dd, release, settle, modify or discharge the obligation of any . . . guarantor . . . for any of the [l]iabilities" or "[t]ake any other action which might constitute a

defense available to, or a discharge of . . . any other . . . [g]uarantor . . . ." Because the defendant contractually agreed that the release of a coguarantor would not result in a corresponding release of his own obligations under the guaranty agreement, the Appellate Court's conclusion to the contrary was improper.

The defendant's second claim is that the Appellate Court's decision is improperly based on an assumption of a fact that is not part of the record. As an alternative ground for affirming the trial court's decision to grant the plaintiff's motion to strike, the Appellate Court stated that "the defendant's contributive share was presumptively half of the obligation, which, at the time of the deficiency judgment, was more than $1,050,000. His payment of $275,000 would not appear in the circumstances to be anything other than a portion of his own contributive share. [Therefore] . . . the defendant is not entitled to reimbursement from the plaintiff." *Lestorti* v. *DeLeo*, supra, 114 Conn. App. 56. The defendant claims that the Appellate Court's determination that, at the time of the deficiency judgment, the defendant's contributive share of the obligation was more than $1,050,000 is not supported by the allegations of his counterclaim or applicable law. The defendant argues that, although Wachovia may have *claimed* a deficiency of more than $2 million, no deficiency judgment ever was established in that amount, and, therefore, there was no basis in fact or law for the Appellate Court to conclude that the stipulated deficiency judgment of $275,000 was anything other than the full outstanding balance due on the note. We agree with the defendant that the Appellate Court improperly concluded that the defendant's contributive share of the outstanding obligation was more than $1,050,000. We disagree, however, with the defendant to the extent that he claims that the stipulated deficiency judgment either establishes or represents the full outstanding balance due on the note

for purposes of determining whether the defendant has paid more than his contributive share and, therefore, is entitled to contribution.

The defendant alleged in his counterclaim that, "[o]n or about August 8, 2005, the court [rendered] a judgment of strict foreclosure in the Pond Place action in favor of [Wachovia]. At the time of the judgment, the court found that the debt owing to [Wachovia], not including fees and costs, was $2,400,834.96 and that, based on [certain] appraisals, the value of the property being foreclosed was $295,000." The defendant further alleged that, "[i]n order to avoid the substantial risk of liability for a much larger deficiency judgment, [the defendant] negotiated and settled [Wachovia's] deficiency claim for $275,000," and that, "on or about August 15, 2006, the court [rendered] a stipulated deficiency judgment [in accordance with the settlement] in the Pond Place action . . . ."

We conclude that the Appellate Court improperly determined that the outstanding debt at the time of the deficiency judgment was the difference between $2,400,834.96 and $295,000, or approximately $2.1 million. The rule of law in Connecticut since 1833, when Connecticut first enacted a deficiency judgment statute, is that, in order to determine the amount of any deficiency owed after a judgment of strict foreclosure, the value of the property foreclosed on must be determined *as of the date title vested in the foreclosing plaintiff.* See, e.g., *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 449, 582 A.2d 182 (1990) ("[t]he value of the premises on the date that title becomes vested in the mortgagee determines whether the mortgagee is entitled to a deficiency judgment" [internal quotation marks omitted]); *Farmers & Mechanics Savings Bank* v. *Durham Realty, Inc.*, 34 Conn. App. 204, 207, 640 A.2d 1017 (1994) ("the value of the property foreclosed shall be the actual value thereof as of the date when title vested

in the plaintiff under the foreclosure decree" [internal quotation marks omitted]). In the present case, the defendant alleged in his counterclaim that the value of the foreclosed property was $295,000 *as of August 8, 2005*, the date on which the court rendered the judgment of strict foreclosure. The counterclaim, however, does not allege the value of the property *as of December 12, 2005*, the date on which title vested in Wachovia. In addition, because Wachovia settled with the defendant rather than seeking a deficiency hearing pursuant to General Statutes § 49-14 (a),[13] the trial court never made a finding as to the value of the foreclosed property as of December 12, 2005. We therefore do not have sufficient facts to determine definitively the amount of the outstanding debt based on the value of the foreclosed property as of December 12, 2005, and thus whether any portion of the defendant's payment of $275,000 exceeded his share of the whole outstanding obligation. Accordingly, we conclude that the Appellate Court improperly affirmed the trial court's decision to grant the plaintiff's motion to strike the defendant's counterclaim.

Nonetheless, we disagree with the defendant to the extent that he claims that the stipulated deficiency judgment either establishes or represents the full outstanding balance due on the note for purposes of determining whether the defendant has paid more than his contribu-

---

[13] General Statutes § 49-14 (a) provides: "At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment."

tive share and, therefore, is entitled to contribution. In the present case, the amount of the deficiency or outstanding obligation was never litigated by the defendant or Wachovia, or determined by the trial court in the foreclosure action. Rather, the defendant and Wachovia agreed to settle Wachovia's claim against the defendant in the amount of $275,000. Moreover, the defendant expressly alleged in his counterclaim that, "[i]n order to avoid the substantial risk of liability for *a much larger deficiency judgment*, [the defendant] negotiated and settled [Wachovia's] deficiency claim for $275,000." (Emphasis added.) Thus, the defendant acknowledges in his counterclaim that the outstanding deficiency was actually "much larger" than $275,000. Accordingly, we disagree with the defendant to the extent that he claims that the settlement amount was judicially determined to be the full outstanding balance due on the note merely because the trial court, at the request of the defendant and Wachovia, rendered a stipulated judgment in accordance with the settlement agreement. In any event, we note that the plaintiff could not be collaterally estopped from litigating the value of the outstanding balance of the note in the present case because that issue was not litigated in the foreclosure action and the plaintiff was not a party to that action. See *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 772, 770 A.2d 1 (2001) ("[c]ollateral estoppel . . . prohibits the relitigation of an issue when that issue was *actually litigated* and *necessarily determined* in a prior action *between the same parties* upon a different claim" [emphasis altered; internal quotation marks omitted]).

As a final matter, we conclude that, in order for a coguarantor to state a claim for contribution, he must allege that he has paid more than his contributive share of the whole outstanding obligation. The defendant's counterclaim does not contain such an allegation. Nevertheless, in light of the fact that the defendant did not

have the benefit of our decision in the present case when he drafted his counterclaim and the fact that the plaintiff did not raise this ground in his motion to strike, we decline to affirm the Appellate Court's judgment on this alternative ground. See *Meredith* v. *Police Commission*, 182 Conn. 138, 140–41, 438 A.2d 27 (1980) (declining to affirm trial court's decision to strike complaint on ground of nonjoinder of necessary party, when such ground was not raised by defendant in motion to strike). On remand, the defendant shall be given an opportunity to replead the necessary allegations in accordance with this decision.

In order to recover any amount of contribution from the plaintiff, the defendant will have the burden of proving that he has paid more than his contributive share of the whole outstanding obligation to Wachovia. The defendant thus must prove that the value of the subject property as of December 12, 2005, was not $295,000 but, rather, was greater than $1,850,834.96,[14] such that the deficiency or whole outstanding obligation was less than $550,000.[15] Although it may be unlikely that the defendant will be able to make such an allegation in a revised counterclaim or eventually prove his claim, we conclude that the defendant should be afforded a fair opportunity to do so.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand

[14] This figure represents the debt owed to Wachovia at the time of foreclosure, that is, $2,400,834.96, less $550,000, which represents one half of the amount that the defendant paid to Wachovia, that is, $275,000, in settlement of the deficiency.

[15] We reached these figures as follows: If the whole outstanding obligation equals $550,000, the defendant's contributive share is $275,000, which is exactly one half of that amount. Accordingly, the whole outstanding obligation must be *less than* $550,000 for the defendant to have paid an amount *in excess* of his contributive share, thus giving rise to a valid cause of action for contribution.

the case to the trial court for further proceedings according to law.

In this opinion KATZ and McLACHLAN, Js., concurred.

ROGERS, C. J., with whom PALMER, J., joins, concurring and dissenting. The majority concludes that the Appellate Court properly concluded that the defendant Louis A. Lestorti, Jr.,[1] will not be entitled to equitable contribution from the plaintiff, James C. Lestorti, unless he can establish on remand that he paid more than his contributive share of the outstanding debt to Wachovia Bank, N.A. (Wachovia).[2] I disagree. Instead, I would conclude that the defendant was entitled to equitable contribution from the plaintiff for one half of the amount that he paid in satisfaction of the deficiency judgment in the foreclosure action, subject to any defenses that the plaintiff could have raised in that action.

In support of its conclusion that the defendant is entitled to equitable contribution only for amounts paid in excess of his contributive share, the majority relies in part on the Restatement (Third), Suretyship and Guaranty § 55 (1), p. 236 (1996), under which, "[a]s between cosureties for the same underlying obligation, each cosurety is a principal obligor to the extent of its contributive share . . . and a secondary obligor as to the remainder of its duty pursuant to its secondary obligation." Accordingly, a cosurety's right of contribu-

---

[1] See footnote 2 of the majority opinion.

[2] The majority also concludes that the Appellate Court improperly concluded that the fact that the plaintiff's debt to Wachovia was discharged as the result of Wachovia's failure to serve the plaintiff in the foreclosure action meant that Wachovia was not entitled to collect from the defendant an amount greater than the defendant's contributive share and, therefore, any payment in excess of that amount was gratuitous. I agree with this conclusion.

tion against the other cosureties does not arise unless it has paid more than its contributive share, and its right to contribution is limited to the amount that is in excess of its contributive share.[3] A number of courts have adopted this view.[4]

Other authorities, however, have recognized that the right to equitable contribution "[is] based upon princi-

---

[3] "To the extent that, as between themselves, one cosurety is a secondary obligor and the other is a principal obligor, the former has rights of contribution against the latter. The rights of contribution are the same as the rights of a secondary obligor against a principal obligor . . . ." Restatement (Third), supra, § 55 (2), p. 236. "[T]he [principal obligor's] duty to reimburse, like the principal obligor's duty to perform, arises from implied contract. Just as the principal obligor impliedly agrees that it will perform the underlying obligation so that the secondary obligor will not have to perform, the principal obligor also agrees that it will reimburse the secondary obligor to the extent that the secondary obligor does perform, thereby fulfilling all or part of the underlying obligation." Id., § 22, comment (a), p. 94; see also id., § 58, comment (a), p. 248 ("When one cosurety performs beyond its contributive share and receives contribution from another cosurety, the cosureties are in the same position as if the contributing cosurety had performed the secondary obligation to the same extent as its contribution to the performing cosurety. Under the rule of this section, the rights of the contributing cosurety as against the principal obligor are the same as they would be if the contributing cosurety had performed its secondary obligation to the same extent as its contribution.").

[4] See *Exchange Elevator Co.* v. *Marshall*, 147 Neb. 48, 61, 22 N.W.2d 403 (1946) ("[a] party who has made a partial payment is not entitled to contribution, even though the others have paid nothing, until his own payment exceeds his proportionate share of the whole debt, and he is then entitled to collect a proportionate share only of the excess, from each party, the proportionate share in each case being determined by dividing the total sum in question among the number of solvent parties within the jurisdiction of the court" [internal quotation marks omitted]); *Falb* v. *Frankel*, 73 App. Div. 2d 930, 931, 423 N.Y.S.2d 683 (1980) ("[w]here . . . each of two cosureties compromises his own liability for less than one half of the original debt owed to the common creditor but for different amounts, the law gives no right of contribution to the surety paying the greater sum because he merely settled his own obligation and paid nothing in excess of his own debt"); see also *Assets Realization Co.* v. *American Bonding Co.*, 88 Ohio St. 216, 254, 102 N.E. 719 (1913) ("the doctrine of contribution is not founded on contract, but arises from the equitable consideration that persons subject to a common duty or debt, should contribute equally to the discharge of the duty or debt; and so where one performs the whole duty or pays the debt, *or more than his aliquot part*, each of the others should contribute to him, so as to equalize the discharge of what was a common burthen"

ples of natural justice, which require that persons under a *common* burden bear responsibility in *equal proportions* and that one party not be required to bear more than his or her just share to the advantage of his or her co-obligors." (Emphasis added.) 18 Am. Jur. 2d 16, Contribution § 6 (2004); see also *Fidelity & Casualty Ins. Co.* v. *Sears, Roebuck & Co.*, 124 Conn. 227, 231–32, 199 A. 93 (1938) (doctrine of equitable contribution is based "upon the equitable principle that those voluntarily assuming a common burden should bear it equally"). In apparent recognition of this principle, the Restatement of Restitution has recognized an exception to the rule that a cosurety is entitled to contribution only when he has paid more than his contributive share when the other coguarantors have been released from their obligation. See Restatement, Restitution § 82, comment (b), p. 370 (1937) ("[i]f the payor secures a full release from the creditor . . . [he] is entitled to contribution although the amount thus paid is less than what was originally his proportionate share"). Presumably, release of the other cosureties is required to prevent potential double recoveries against them and to avoid multiplicity of proceedings.[5] Cf. *Estate of Dresser* v. *Maine Medical Center*, 960 A.2d 1205, 1209 (Me. 2008) (Mead, J., dissenting) ("necessity of extinguishing liability of non-settling tortfeasors is clear: failure to do so could expose a non-settling tortfeasor to liability on

[emphasis added; internal quotation marks omitted]); see also *Lex* v. *Selway Steel Corp.*, 203 Iowa 792, 818, 206 N.W. 586 (1927) (same).

[5] In other words, if a coguarantor pays less than his contributive share of an outstanding debt and fails to obtain from the obligee a release of the other coguarantor, and he then obtains contribution from that coguarantor for one half of the amount paid, the nonpaying guarantor could also be required to pay the remainder of the outstanding debt to the creditor, and would then be entitled to seek contribution from the first coguarantor.

both the underlying claim and the contribution claim").[6]
A number of courts have adopted this exception.[7]

[6] The majority states that the sole rationale for the rule requiring a full release from the creditor before allowing a coguarantor who has paid less than his contributive share to seek contribution from another coguarantor is that the paying coguarantor has conferred a benefit on the nonpaying coguarantor. The majority concludes that, because, in the present case, the plaintiff's debt to Wachovia was discharged by operation of law and not as the result of the defendant's payment of the debt, the defendant has conferred no benefit on the plaintiff and, therefore, is not entitled to contribution. I disagree. Because I believe that coguarantors are "under a *common* burden" and generally should "bear responsibility in *equal proportions*" for payments to the obligee; (emphasis added) 18 Am. Jur. 2d 16, supra, § 6; I believe that the best justification for the general rule that a coguarantor cannot seek contribution from the other coguarantors unless he has paid more than his contributive share is the prevention of double recoveries and multiple proceedings. This concern is allayed both when the nonpaying coguarantor has been released as the result of the paying coguarantor's actions and when he has been discharged by operation of law.

The majority points out that under 18 Am. Jur. 2d 16, supra, § 6, a paying coguarantor must show that he has acted " 'to the advantage' " of the nonpaying coguarantor and interprets this to mean that the coguarantor's actions must have reduced or eliminated the nonpaying coguarantor's actual liability to the creditor in order to obtain contribution. I disagree. Just as the majority concludes that, because a nonpaying coguarantor has implicitly agreed that he will reimburse the paying coguarantor for sums paid in excess of the paying coguarantor's equitable share, a coguarantor who has paid more than his contributive share is entitled to contribution even if the nonpaying coguarantor has been discharged, I would conclude that, because a coguarantor has implicitly agreed that he will pay his proportionate share of any amounts that are paid to the creditor under the joint obligation, any payments by other coguarantors are to his " 'advantage' " under 18 Am. Jur. 2d 16, supra, § 6, regardless of whether the creditor could have recovered the amounts from the nonpaying coguarantor.

[7] See *Humphrey* v. *O'Connor*, 940 P.2d 1015, 1020 (Colo. App. 1996) ("[i]f the payor secures a full release from the creditor . . . the payor is entitled to contribution although the amount thus paid is less than what was originally his proportionate share" [internal quotation marks omitted]); *Thomas* v. *Jacobs*, 751 A.2d 732, 734 n.1 (R.I. 2000) ("contribution among co-guarantors [is permitted] when one co-guarantor has paid less than his or her fair share of the debt and has secured a full release from the creditor for any other co-guarantor[s]"); *Sacks* v. *Tavss*, 237 Va. 13, 19, 375 S.E.2d 719 (1989) (cosurety who had paid more on debt than second cosurety, but less than contributive share of original debt, was not entitled to contribution from second cosurety when first cosurety had not secured release for second cosurety); see also *Estate of Dresser* v. *Maine Medical Center*, supra, 960 A.2d 1207–1208 (plaintiff was entitled to contribution from defendant even though injured party's claims against defendant had not been formally released because claims were barred by statute of limitations).

The majority concludes that this court previously has adopted the theory expressed in § 55 of the Restatement (Third) of Suretyship and Guaranty, that a coguarantor is entitled to equitable contribution only for amounts paid in excess of its contributive share. In support of this conclusion, it quotes this court's statement in *Waters* v. *Waters*, 110 Conn. 342, 345, 148 A. 326 (1930), that, under Connecticut law, a guarantor's right of contribution from a coguarantor arises only when the guarantor "has paid in excess of *his share of the whole [outstanding] obligation.*" (Emphasis added.) The majority also quotes this court's statement in *Bristol Bank & Trust Co.* v. *Broderick*, 122 Conn. 310, 315, 189 A. 455 (1937), that "[a] guarantor, as between himself and his co-guarantors, is a principal for the portion of the debt which he ought to pay and is a surety [or secondary obligor] for the remainder . . . ." On the basis of these statements, the majority concludes that it is settled under Connecticut law that, "when a coguarantor has made a payment to the creditor in an amount that is *less than his share of the whole outstanding obligation,* he has *no right to contribution* from the other coguarantors." (Emphasis in original.) Even if the majority's interpretation of *Waters* is correct,[8] however,

---

[8] In *Waters,* the plaintiff paid the full amount of a debt for which he and the defendant were jointly and severally liable. *Waters* v. *Waters,* supra, 110 Conn. 344–45. Under these circumstances, the plaintiff's contributive share of the outstanding debt and his proportionate share of the settlement amount were identical. Thus, as used in this court's statement that, "if one debtor is compelled to pay the full amount of the debt, a right of contribution against the other at once arises for the amount he has paid in excess of his share of the whole obligation"; id., 345; the phrase "his share of the whole obligation" could mean either the debtor's contributive share or his proportionate share of the amount paid. The statement does not necessarily imply that when a person has paid *less* than the full amount of the outstanding debt, he is entitled only to equitable contribution for the amount paid in excess of his contributive share.

I recognize that this court's statement in *Bristol Bank & Trust Co.* v. *Broderick,* supra, 122 Conn. 315, that "[a] guarantor, as between himself and his co-guarantors, is a principal for the portion of the debt which he ought to pay and is a surety for the remainder" supports the majority's

that case simply does not address the situation where a coguarantor has paid less than his contributive share and the obligations of the other coguarantors have been released or discharged by operation of law.

I see no equitable or policy reasons why, if two coguarantors are jointly and severally liable to an obligee, and one coguarantor pays less than his contributive share and the other coguarantor pays nothing because his obligation to the obligee has been discharged by operation of law, we should maintain the legal fiction that the nonpaying coguarantor was not jointly liable for the amount paid for purposes of equitable contribution. Rather, I believe that it is more equitable to allow the paying coguarantor to seek equitable contribution under these circumstances; see *Estate of Dresser* v. *Maine Medical Center*, supra, 960 A.2d 1207–1208 (plaintiff was entitled to contribution from defendant even though injured party's claims against defendant had not been formally released because claims were barred by statute of limitations);[9] provided that the other coguarantor has an opportunity to raise any defenses that he or the paying coguarantor could have raised in an action on the common obligation. See 18 Am. Jur. 2d 100, supra, § 86 ("[s]ince the right to contribution is based on equitable principles, the fact that

interpretation of *Waters*. This statement—which was made well after this court's decision in *Waters*—was dictum, however, and the case has never been cited by this court or the Appellate Court. Accordingly, I do not agree with the majority that the question is clearly settled under Connecticut law.

[9] The majority concludes that *Estate of Dresser* has no relevance to this case because it was a tort case. In my view, however, the principle underlying that case is the same as the principle underlying the exception set forth in comment (b) to § 82 of the Restatement of Restitution: When A has satisfied a liability to B and seeks contribution from C for that payment, A must establish that C has no potential liability to B for the same claim. Under *Estate of Dresser*, that fact can be established either by showing that C has been released from liability or that he has been discharged by operation of law. I see no reason why the same reasoning should not apply in cases involving coguarantors of a note.

the plaintiff was guilty of bad faith in defending a suit on the common obligation, whereby the defendant was deprived of opportunity to assert a defense thereto, is a good defense to the action for contribution"). In the present case, the plaintiff's obligations to Wachovia were discharged by operation of General Statutes § 49-1.[10] Accordingly, I would conclude that the defendant was entitled to seek equitable contribution from him even if he paid less than his contributive share.

I concur with the majority's conclusion that we should reverse the judgment of the Appellate Court and remand the case to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court for further proceedings. I disagree, however, that the defendant is entitled to contribution only for the amounts paid in excess of his contributive share of the outstanding debt. Instead, I would conclude that the defendant is entitled to equitable contribution of one half of the $275,000 that he paid to Wachovia in satisfaction of the deficiency claim, subject to any

---

[10] General Statutes § 49-1 provides: "The foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure and also against any person or persons upon whom service of process to constitute an action in personam could have been made within this state at the commencement of the foreclosure; but the foreclosure is not a bar to any further action upon the mortgage debt, note or obligation as to any person liable for the payment thereof upon whom service of process to constitute an action in personam could not have been made within this state at the commencement of the foreclosure. The judgment in each such case shall state the names of all persons upon whom service of process has been made as herein provided."

The majority states that there is no reason to decide in the present case whether to adopt an exception to the general rule that a coguarantor must pay more than his contributive share in order to seek contribution because the defendant did not allege a necessary factual premise for the exception, namely, that the plaintiff has been discharged from his debt. The trial court found, however, that the plaintiff's "liability was extinguished by the foreclosure obtained by Wachovia's successor in interest" pursuant to § 49-1. That finding has not been challenged on appeal.