******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL KLING *v.* HARTFORD CASUALTY
INSURANCE COMPANY
(AC 44292)

Bright, C. J., and Cradle and DiPentima, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant insurance com-
pany for, inter alia, breach of contract, claiming that the defendant had
a duty to defend C, doing business as E Co., under a business liability
insurance policy it had issued to C, and that its failure to do so left the
defendant liable to the plaintiff for damages the plaintiff suffered due
to C's and E Co.'s negligence. The plaintiff sustained injuries when a
trailer that was attached to a pickup truck driven by C, transporting
large kettle corn equipment owned by E Co., dislodged from the pickup
truck and struck the plaintiff. After the incident occurred, the plaintiff
brought a personal injury action against C and E Co., seeking to recover
damages for his injuries. At the time of the incident, C was insured
under the business liability insurance policy issued by the defendant.
The defendant, however, declined to defend C, citing a provision that
excluded coverage for bodily injuries that arose out of the use of an
"auto." C did not appear or otherwise defend the personal injury action,
and the plaintiff obtained a default judgment against C and E Co. There-
after, the plaintiff brought the present action against the defendant
pursuant to the applicable statute (§ 38a-321). The defendant filed a
motion for summary judgment, arguing that, on the basis of a provision
in the policy that excluded coverage for injuries arising out of the
operation of an "auto," it was entitled to a declaration that the policy
did not provide liability coverage for the injuries sustained by the plain-
tiff. While that motion was pending, the case proceeded to a bench trial
on the breach of contract count based on a stipulated record. The trial
court rendered judgment for the defendant on that count, finding that
the defendant did not have a duty to defend C or E Co. because the
policy's auto exclusion applied and, thus, precluded coverage for the
plaintiff's injuries. The trial court also dismissed the remaining two
counts of the plaintiff's complaint, concluding that the plaintiff did not
have standing to bring either count in light of the court's conclusion
that the plaintiff did not have privity of contract with the defendant and
there was no statutory or common-law basis to support the plaintiff's
allegations under either count. On the plaintiff's appeal to this court,
*held* that the trial court did not err in determining that the defendant
did not have a duty to defend C and E Co., that court having correctly
concluded that all of the injuries that the plaintiff sustained were
excluded from coverage under the provision in the business liability
insurance policy applicable to injuries arising out of the use of an auto:
the auto exclusion in C's insurance policy plainly and unambiguously
precluded coverage for the plaintiff's injuries as the injuries that he
sustained arose out of C's act of driving his truck and trailer on public
roads and, therefore, arose out of the use of an auto; moreover, although
negligence unrelated to the use of an auto, namely, the claim that the
trailer and kettle corn equipment were disconnected from C's truck due
to his failure to properly secure the trailer to the truck and/or his failure
to properly maintain the hitch on the truck to which the trailer was
attached, may have contributed to the plaintiff's injuries, those injuries
nonetheless arose out of the use of an auto because the plaintiff would
not have been injured without C's use of the truck and trailer.

Argued November 17, 2021—officially released April 12, 2022

*Procedural History*

Action to recover damages for, inter alia, breach of
contract, and for other relief, brought to the Superior
Court in the judicial district of New Haven, and tried
to the court, *S. Richards, J.*, as to count one of the

complaint in accordance with the parties' stipulation; thereafter, the court, *S. Richards, J.*, granted the defendant's motion to dismiss the remaining counts of the complaint; judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Leann Riether*, for the appellant (plaintiff).

*Daniel J. Raccuia*, for the appellee (defendant).

*Opinion*

BRIGHT, C. J. The plaintiff, Michael Kling, appeals from the judgment of the trial court in favor of the defendant, Hartford Casualty Insurance Company.[1] On appeal, the plaintiff claims that the court erred in concluding that the defendant did not owe a duty to defend its insured, Newton Carroll doing business as Elm City Kettle Corn Company (Elm City), in connection with injuries that the plaintiff suffered as a result of Carroll's and Elm City's negligence. We affirm the judgment of the trial court.

The following facts, which are undisputed, and procedural history are relevant to our resolution of this appeal. On the morning of July 13, 2012, the plaintiff was walking north on the sidewalk along Orchard Street in New Haven. At the same time, Carroll was driving a pickup truck that was towing a trailer north on Orchard Street. Attached to the inside of the trailer was equipment that Carroll used to make kettle corn. As Carroll was driving past where the plaintiff was walking, the trailer detached from the truck, catapulted over a curb, and struck the plaintiff, pinning him to the ground. The plaintiff suffered several injuries including a fractured right femur, a fractured right elbow, and meniscal tears in his right knee.

In May, 2014, the plaintiff brought a personal injury action against Carroll and Elm City, alleging that Carroll's negligence in operating his truck and trailer—specifically, Carroll's failure to ensure that the trailer was securely attached to the truck—had caused the plaintiff "severe personal and painful injuries." See *Kling* v. *Elm City Kettle Corn Co.*, *LLC*, Superior Court, judicial district of New Haven, Docket No. CV-14-6047194-S. At the time of the accident, Carroll and Elm City were insured under a business liability policy that had been issued by the defendant, which provided coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury . . . .' " The policy also stated that the defendant had "the right and duty to defend the insured against any 'suit' seeking those damages." The defendant declined to defend Carroll, citing a provision in the policy that excluded coverage for bodily injuries that arose out of the use of an automobile. Carroll did not appear or otherwise defend the personal injury action, and the plaintiff obtained a default judgment against him and Elm City for $495,843.57.

The plaintiff then filed this action against the defendant pursuant to General Statutes § 38a-321,[2] alleging in the operative complaint breach of contract (count one), breach of the implied covenant of good faith and fair dealing (count two), and negligent infliction of emotional distress (count three). The underlying premise of the plaintiff's claims was that the defendant had a

duty to defend Carroll and Elm City under the business liability policy and that its failure to do so left the defendant liable to the plaintiff for the damages he suffered due to Carroll's and Elm City's negligence. In its answer to the plaintiff's complaint, the defendant, inter alia, alleged in its second special defense that the plaintiff's claims were barred by the language of the business liability policy, in particular the language that excludes coverage for injuries resulting from the operation of an "auto."

The defendant then moved for summary judgment on all three counts based on the alleged auto exclusion. The court denied the defendant's motion for summary judgment after finding that the language of the insurance policy was ambiguous. The defendant then filed a motion to dismiss counts two and three on the basis that the plaintiff lacked standing to assert those claims because § 38a-321 only permits a direct action by a plaintiff for breach of contract. While that motion was pending, the case proceeded to a bench trial on count one based on a stipulated record. In count one, the plaintiff specifically alleged that the defendant had breached its contract of insurance when it failed to defend Carroll and Elm City in the plaintiff's personal injury action.

Thereafter, the court issued its memorandum of decision, wherein it rendered judgment for the defendant on count one, after finding that the defendant had no duty to defend Carroll and Elm City because the policy's auto exclusion applied, thus precluding coverage for the plaintiff's injuries. The court also dismissed counts two and three of the plaintiff's complaint after concluding that the plaintiff did not have standing to bring either count in light of the court's conclusion that the plaintiff did not have privity of contract with the defendant and that there was no statutory or common-law basis to support the plaintiff's allegations under either count. The plaintiff then filed a motion to reargue/reconsider, which the court denied. This appeal followed, challenging both the judgment rendered after the trial on count one and the dismissal of counts two and three. Additional facts will be set forth as necessary.

The parties agree, as do we, that if the court's contractual analysis regarding the duty to defend is correct then the plaintiff cannot succeed on any of his three counts. Consequently, we address that issue first. We begin by setting forth the applicable standard of review and principles of law that guide our analysis. Our standard of review for interpreting insurance policies is well settled. "The construction of an insurance policy presents a question of law that we review de novo." *Warzecha* v. *USAA Casualty Ins. Co.*, 206 Conn. App. 188, 191, 259 A.3d 1251 (2021). When construing an insurance policy, "we look at the [policy] as a whole, consider all relevant portions together and, if possible,

give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *Israel* v. *State Farm Mutual Automobile Ins. Co.*, 259 Conn. 503, 509, 789 A.2d 974 (2002). "Insurance policies are interpreted based on the same rules that govern the interpretation of contracts. . . . In accordance with those rules, [t]he determinative question is the intent of the parties . . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured . . . ." (Citation omitted; internal quotation marks omitted.) *Warzecha* v. *USAA Casualty Ins. Co.*, supra, 191–92.

An insurer's duty to defend "is determined by reference to the allegations contained in the [underlying] complaint." (Internal quotation marks omitted.) *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 687, 846 A.2d 849 (2004). The duty to defend "does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether [the complaint] stated facts which bring the injury within the coverage." (Internal quotation marks omitted.) *Security Ins. Co. of Hartford* v. *Lumbermens Mutual Casualty Co.*, 264 Conn. 688, 712, 826 A.2d 107 (2003). "If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Internal quotation marks omitted.) *Moore* v. *Continental Casualty Co.*, 252 Conn. 405, 409, 746 A.2d 1252 (2000). That being said, an insurer "has a duty to defend only if the underlying complaint *reasonably* alleges an injury that is covered by the policy." (Emphasis in original.) *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, 308 Conn. 146, 156, 61 A.3d 485 (2013). "[W]e will not predicate the duty to defend on a reading of the complaint that is . . . conceivable but tortured and unreasonable." (Internal quotation marks omitted.) Id. There is also no duty to defend "if the complaint alleges a liability which the policy does not cover . . . ." (Internal quotation marks omitted.) Id.

The plaintiff claims that the defendant has a duty to defend because (1) the policy language is ambiguous and, thus, must be construed in favor of providing coverage and (2) the allegations in the plaintiff's complaint

have a clear possibility of falling within the coverage provided under the policy.[3] On the basis of our review of the policy language and the plaintiff's complaint, we are not persuaded.

We begin with the relevant language of the plaintiff's complaint in the personal injury action on which he relies for his claim of coverage:

"2. On [July 13, 2012, at approximately 9:25 a.m., Carroll] was the operator of a 2012 Dodge truck . . . which vehicle was towing a trailer with large kettle corn equipment affixed . . . and was traveling north on Orchard Street . . . .

"4. [W]hile said vehicle was being operated by [Carroll], said trailer with large kettle corn equipment owned by [Elm City] dislodged from the truck, catapulted over the curb striking the plaintiff and pinning the plaintiff thereby causing the plaintiff severe personal and painful injuries as hereinafter more particularly set forth. . . .

"6. Said collision of debris and the resulting injuries, damages, and losses to the plaintiff were caused by the carelessness and negligence of [Carroll doing business as Elm City] in one or more of the following ways . . .

"c. in that he secured the truck camp trailer improperly to prevent equipment to fall on the roadway, posing a risk to the plaintiff . . . .

"f. in that the fastening equipment on the trailer hitch was in a broken condition and the defendant failed to inspect the trailer to observe the broken and loose condition of the trailer hitch; [and]

"g. in that [Carroll] failed to adequately secure a safety chain to secure the trailer in the event that the hitch/ fastening equipment became dislodged."

The plaintiff argues that these allegations fall within the coverage of the business liability insurance policy issued by the defendant which provides liability coverage, including a legal defense, for any lawsuits seeking damages "because of 'bodily injury' . . . to which this insurance applies." The defendant agrees that there would be coverage for the plaintiff's injuries if it were not for the policy's exclusions, principally the auto exclusion. Under that exclusion, the policy does not provide coverage or a duty to defend for " 'bodily injury' . . . *arising out of* the ownership, maintenance, use or entrustment to others of any . . . auto . . . owned or operated by . . . any insured." (Emphasis added.) "Auto" is defined under the policy as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment."

The defendant argues that the language of the exclusion is plain and unambiguous as applied to the plaintiff's claim. In particular, it argues that there is no ques-

tion that the plaintiff's injuries, as alleged, arose out of Carroll's operation of an auto owned by Elm City. The defendant further argues that the definition of auto in the exclusion includes not only the truck Carroll was driving, but also the trailer attached thereto and the kettle corn equipment attached to the trailer. Consequently, the defendant argues that the claim clearly is excluded from coverage, and that the defendant owed no duty to defend Carroll and Elm City in the personal injury action.

Connecticut courts have had previous occasions to interpret the phrase "arising out of," as the phrase is used in auto exclusions in insurance policies and consistently have held that the phrase broadly applies to preclude coverage for claims whenever a plaintiff's injuries are related—even slightly—to the use of an automobile. See *New London County Mutual Ins. Co.* v. *Nantes*, 303 Conn. 737, 753–54, 36 A.3d 224 (2012); *Hogle* v. *Hogle*, 167 Conn. 572, 577, 356 A.2d 172 (1975).

For example, in *Hogle*, our Supreme Court concluded that a homeowners insurance policy did not provide coverage for injuries that a passenger in a car sustained when the driver's dog jumped from the rear seat into the front seat, causing the driver to crash the car and injure the passenger. *Hogle* v. *Hogle*, supra, 167 Conn. 578–79. The policy in *Hogle* included an auto exclusion, which stated that "coverage does not apply to the operation . . . of . . . automobiles . . . while away from" the insured's home. (Internal quotation marks omitted.) Id., 576. In interpreting that exclusion, the court broadly held that "it is generally understood that for liability for an accident or an injury to be said to arise out of the use of an automobile for the purpose of determining coverage under the appropriate provisions of a liability insurance policy, it is sufficient to show only that the accident or injury was connected with, had its origins in, grew out of, flowed from, or was incident to the use of the automobile, in order to meet the requirement that there be a causal relationship between the accident or injury and the use of the automobile." (Internal quotation marks omitted.) Id., 577. Accordingly, because the driver's use of a car was in some way connected "with the accident or the creation of a condition that caused the accident," there was no coverage for the passenger's injuries under the auto exclusion, and the insurer thus did not have a duty to defend. Id., 578.

Similarly, in *Nantes*, our Supreme Court determined that a homeowners insurance policy did not provide coverage for injuries that houseguests suffered from carbon monoxide poisoning that was caused by the homeowner leaving her car running overnight in an attached garage. *New London County Mutual Ins. Co.* v. *Nantes*, supra, 303 Conn. 759. That policy also contained an auto exclusion, which stated that coverage "do[es] not apply to bodily injury or property damage

. . . [a]rising out of . . . [t]he . . . use . . . of motor vehicles . . . ." (Internal quotation marks omitted.) Id., 741. On the basis of this exclusion, and the court's earlier holding in *Hogle*, the court in *Nantes* likewise concluded that, because the guests' injuries "had [their] origins in, grew out of, flowed from, or [were] incident to" the homeowner's use of a car, the insurer had no duty to defend. (Internal quotation marks omitted.) Id., 759.

As alleged in the underlying complaint, the plaintiff's injuries resulted from Carroll's operation of a truck and trailer on the public roads of New Haven. Specifically, the plaintiff was injured when the trailer transporting the attached kettle corn equipment detached from the truck and struck him. The auto exclusion in the insurance policy issued by the defendant unambiguously precludes coverage for injuries that arise out of the use of an auto. The policy also unambiguously defines "auto" to include "land motor vehicles" (such as trucks), trailers, *and* any equipment that is *attached* to said trailers. Under the plain language of the policy, it is indisputable that the plaintiff's injuries arose out of the use of an auto: but for Carroll's use of a truck, an auto, to transport a trailer containing kettle corn equipment, a second auto, the plaintiff never would have been struck by the trailer and, consequently, would not have been injured. Therefore, those injuries are connected with, have their origins in, grew out of, flowed from, or were incident to Carroll's use of two autos. See *Hogle* v. *Hogle*, supra, 167 Conn. 577. As such, because the plaintiff's injuries were related to, and thus arose out of, Carroll's use of an auto, there is no coverage for those injuries under the insurance policy.

Given our conclusion that the auto exclusion clearly precludes coverage for the plaintiff's injuries, we necessarily reject the plaintiff's claim that the language of the policy is ambiguous. The plaintiff claims that both factual and legal uncertainty exist with regard to whether the defendant has a duty to defend, and that such uncertainty is enough to make the policy ambiguous. In *Nash Street, LLC* v. *Main Street America Assurance Co.*, 337 Conn. 1, 10–11, 251 A.3d 600 (2020), our Supreme Court explained how factual and/or legal uncertainty can create ambiguity in an insurance policy and thus give rise to a duty to defend: "Factual uncertainty arises when it is unclear from the face of the complaint whether an alleged injury occurred in a manner that is covered by the policy. . . . Legal uncertainty arises when it is unclear how a court might interpret the policy language at issue, and, as a result, it is unclear whether the alleged injury falls within coverage." (Citations omitted.)

The plaintiff argues that there is factual uncertainty because the complaint in the personal injury action included allegations that the trailer and kettle corn

equipment became disconnected from Carroll's truck due to his failure to properly secure the trailer to the truck and/or due to his failure to properly maintain the hitch on the truck to which the trailer was attached. Thus, according to the plaintiff, his injuries were due to Carroll's negligence before he ever began operating the truck to which the trailer was attached and, thus, did not arise out of the use of an auto. He argues that, at the very least, the allegations of his personal injury complaint raised the possibility of coverage and, therefore, triggered the defendant's duty to defend. We are not persuaded.

We initially note that the word "maintenance" is never used in the plaintiff's complaint and that the plaintiff conceded as much at oral argument before this court. In addition, the auto exclusion applies not only to bodily injuries arising out of the operation of an auto, but also to those arising out of the ownership, maintenance, and use of an auto. The exclusion defines "use" as including " 'loading or unloading.' " Thus, even construing the allegations of the plaintiff's personal injury complaint as alleging negligence in how Carroll and Elm City maintained the truck or trailer or how they connected the two, the claims are excluded from coverage by the plain language of the policy.

Finally, as noted previously in this opinion, our Supreme Court consistently has interpreted the "arising out of" language in auto exclusions very broadly. In both *Hogle* and *Nantes*, our Supreme Court concluded that the auto exclusions in both insurance policies precluded coverage for the plaintiff's injuries *even though* the underlying complaints in both cases alleged acts of negligence that occurred independently of the insured's use of an automobile. See *Hogle* v. *Hogle*, supra, 167 Conn. 578 ("Aetna's obligation to pay the judgment rendered . . . does not depend on whether it was [the driver's] negligent operation of the car, or the activities of his dog inside the car, which constituted the 'proximate cause' of the accident . . . . Such obligation, rather, depends in this case on another fact, namely whether [the driver's] 'use' of his car was connected with the accident or the creation of a condition that caused the accident."); see also *New London County Mutual Ins. Co.* v. *Nantes*, supra, 303 Conn. 758 ("[I]t is irrelevant that an arguably covered event—[the host's] closing of the garage door—was a contributing cause of [the guests'] injuries. . . . [T]he fact that [the host's] use of her motor vehicle was connected to or created a condition that caused [the guests'] injuries is enough to bring [the injuries] within the motor vehicle exclusion.").

In the present case, as in those two cases, although negligence unrelated to the use of an auto *may* have contributed to the plaintiff's injuries, those injuries nonetheless arose out of the use of an auto because,

again, the plaintiff would not have been injured without Carroll's use of two autos: his truck and trailer. Consequently, the role that those autos played in injuring the plaintiff is enough to exclude those injuries from coverage under the policy, regardless of any other non-auto related acts of negligence that may have also contributed to the plaintiff's injuries. Whatever the specific cause for the dislodging of the trailer from Carroll's truck, there is no question that the plaintiff's complaint in the personal injury action alleged that his injuries arose out of the operation of an auto, the definition of which includes both the truck and the trailer with its attached equipment. Consequently, there is no factual uncertainty as to how the plaintiff's injuries were alleged to have occurred.

As to legal uncertainty, the plaintiff argues that the definition of auto in the policy, to which the auto exclusion applies, states that " 'auto' does not include 'mobile equipment.' " He argues that, because the kettle corn equipment that was affixed to the trailer is mobile equipment, there is legal uncertainty as to whether the auto exclusion applies to injuries caused by any of the kettle corn equipment that may have struck the plaintiff.[4]

There are a number of problems with the plaintiff's argument. First, the policy has a definition of "mobile equipment," which is limited to a specific list of "land vehicles." The kettle corn equipment at issue does not fall under any of the vehicles listed in the mobile equipment definition.

Second, it is clear from the policy language that the kettle corn equipment attached to the trailer also meets the definition of auto under the policy's exclusions. The insurance policy defines "auto" as including trailers that are "designed for travel on public roads, *including any attached machinery or equipment*." (Emphasis added.) The trailer and attached equipment here certainly fall within that definition of "auto," meaning that the auto exclusion applies to bar coverage for any injuries that arose out of the use of that trailer and equipment.

Finally, the plaintiff's complaint did not allege that his injuries arose out of the operation of the kettle corn equipment. The complaint alleged that the plaintiff's injuries arose during the transportation of the kettle corn equipment. The policy explicitly excludes from coverage bodily injury arising out of "[t]he transportation of 'mobile equipment' by an 'auto' owned or operated by or rented or loaned to any insured . . . ." Thus, even if the kettle corn equipment was considered mobile equipment under the policy, the exclusion of coverage for the transportation of mobile equipment clearly would apply. Consequently, there is no legal uncertainty that the defendant had no duty to defend Carroll and Elm City.

Nevertheless, the plaintiff contends that the policy language is ambiguous because the various exceptions in the policy "essentially foreclose all liability coverage" and that such a result cannot be what the parties intended. We are not persuaded. Even though the insurance policy does not provide coverage for the injuries alleged in the present case, the policy still provides valuable coverage. For example, the policy certainly would provide coverage if, while Carroll was making and selling kettle corn on the sidewalk, a vat of hot oil spilled and caused injury to a patron or a passerby. Thus, just because the policy does not cover the plaintiff's injuries in the present case does not mean that the policy provides no coverage in other situations.

We also reject the plaintiff's argument that the law of the case doctrine compels us to conclude that the policy language was ambiguous. According to the plaintiff, because the trial court found the policy language ambiguous when it denied the defendant's motion for summary judgment, it could not conclude otherwise at trial, and we too should conclude that such ambiguity exists. This assertion, however, ignores the fact that appellate courts review a lower court's interpretation of an insurance policy de novo. *Warzecha* v. *USAA Casualty Ins. Co.*, supra, 206 Conn. App. 191. As such, we are not bound by the trial court's findings or by the law of the case that was made during the proceedings at trial. *Danehy* v. *Danehy*, 118 Conn. App. 29, 33 n.5, 982 A.2d 273 (2009) (law of case "cannot bind an appellate court, whose function is to determine whether the trial court correctly applied the law"). Thus, our conclusion that the policy's auto exclusion unambiguously precludes coverage for the plaintiff's injuries is unaffected by the trial court's prior conclusion that the policy was ambiguous.[5] See id.

In sum, given our Supreme Court's broad interpretation of the phrase "arising out of" in both *Hogle* and *Nantes*, we conclude that the auto exclusion in the business liability policy at issue here plainly and unambiguously precludes coverage for the plaintiff's injuries.[6] Accordingly, the defendant did not have a duty to defend Carroll and Elm City in the personal injury action.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the plaintiff named "The Hartford" as the defendant on the summons, the plaintiff identified the defendant in the complaint as "Hartford Casualty Insurance Company," which is the defendant's correct name.

[2] General Statutes § 38a-321 provides in relevant part: "Upon the recovery of a final judgment against any person, firm or corporation by any person . . . for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer

had such defendant paid such judgment."

[3] For the sake of clarity and ease of discussion, we have reordered the arguments as they are set forth in the plaintiff's brief.

[4] The plaintiff's fourth amended complaint does not explicitly allege that he was struck by the kettle corn equipment. Instead, it alleges that while Carroll was driving his truck the "trailer with large kettle corn equipment . . . dislodged from the truck, catapulted over the curb striking the plaintiff and pinning the plaintiff thereby causing the plaintiff severe personal and painful injuries . . . ." This allegation suggests that the plaintiff was struck by the trailer and not separately by the kettle corn equipment. Nevertheless, in considering the plaintiff's "mobile equipment" argument, we will construe the allegation broadly as encompassing the possibility that the plaintiff was struck by the kettle corn equipment.

[5] We also note that, given the trial court's eventual holding that the defendant did not owe a duty to defend, the court itself appears to have rejected its earlier conclusion that the policy language was ambiguous, which it was permitted to do. See *Knoblaugh* v. *Marshall*, 64 Conn. App. 32, 37, 779 A.2d 218 ("A judge should hesitate to change his own rulings in a case . . . . Nevertheless, if the case comes before him regularly and he becomes convinced that the view of the law previously applied . . . was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Internal quotation marks omitted.)), cert. denied, 258 Conn. 916, 782 A.2d 1243 (2001).

[6] In his reply brief, the plaintiff attempts to distinguish *Nantes* and *Hogle* by arguing that both cases involved homeowners policies and that this case involves a business liability policy. The plaintiff does not explain why the type of policy matters to the analysis and we conclude that it does not. The same contract interpretation principles apply regardless of the underlying coverage provided by the policy. Consequently, our Supreme Court's reasoning in those cases is equally applicable in the present case, despite the difference in the type of policy.

[7] Given our conclusion regarding count one, and because the plaintiff conceded at oral argument before this court that if he loses on count one, he also loses on counts two and three, we further conclude that the defendant was entitled to judgment in its favor as to counts two and three.

The plaintiff also claims on appeal that the court erred when it denied his motion to reargue/reconsider. Because our conclusion that the defendant did not have a duty to defend is dispositive of the claims raised in the motion to reargue/reconsider, we need not address this argument.

———————————————